IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLORIA A. TIRADO, individually and as the representative of a call of similarly-situated persons,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION,<br><br>Defendant. | Case No. 18-cv-5677<br><br>Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Gloria Tirado filed this putative class action against Defendant Bank of America, N.A alleging that Defendant (1) violated the parties' contract (Count I); or, in the alternative, unjustly enriched itself at Plaintiff's expense (Count II); and (2) violated the Illinois Consumer Fraud Act, 815 ILCS 505/2 (Count III).  Currently before the Court is Defendant's motion to dismiss Plaintiff's complaint [21] pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  For the reasons explained below, Defendant's motion [21] is granted under Rule 12(b)(6) for failure to state a claim.  Plaintiff's complaint is dismissed without prejudice and with leave to file an amended complaint consistent with this opinion no later than October 25, 2019.  The motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction is denied without prejudice to re-raising the argument in response to any amended complaint.  The case is set for further status on November 6, 2019 at 9:00 a.m.

I.     **Background**[1]

On October 26, 2010, Plaintiff Tirado entered into a mortgage with Envoy Mortgage, Ltd for her home in Chicago. [1-2, ¶ 16.] The mortgage was insured through the Federal Housing Administration (FHA), which rendered it subject to certain regulations of the U.S. Department of Housing and Urban Development. [*Id.* ¶¶ 5, 16.] The mortgage was assigned to Defendant Bank of America in June 2012. [*Id.* ¶ 17.]

On May 3, 2017, Defendant served Plaintiff (through her son) with a complaint of foreclosure alleging that she had defaulted on her mortgage on November 1, 2016. [*Id*. ¶ 19.] Throughout the foreclosure proceedings, Plaintiff continued to live at the mortgaged residence. [*Id*. ¶ 18.] After foreclosure proceedings had been initiated, Defendant conducted seven inspections of the property. [*Id*. ¶ 21.] Defendant charged Plaintiff for each of these inspections; altogether Plaintiff was charged $155.00 in inspection fees.[2] [*Id*. ¶¶ 20–21]; [*id*. at 27].

Plaintiff's complaint asserts two (and in the alternative a third) claims on behalf of Plaintiff and a nationwide class: common law breach of contract (Count I) [*Id.* ¶¶ 31–42]—or, in the alternative, unjust enrichment (Count II) [*Id.* ¶¶ 43–49]—and a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("the ICFA") (Count III) [*Id.* ¶¶ 50–61]. Plaintiff alleges that after

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The Court also takes judicial notice of the records in the state court foreclosure action: *Bank of America, N.A. v. Gloria A. Tirado, et al.*, No. 2017-CH-5850 (Ill. Cir. Ct.) (the "Foreclosure Action"). The Court may take judicial notice of matters of the public record, including court records, on a motion to dismiss brought under Rule 12(b)(6). See *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994) ("The district court properly considered the public court documents in deciding the defendants' motions to dismiss, thus we proceed to [the] merits of the Hensons' claims."); see also *Menominee v. Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) (judicially noticing historical documents).

[2] By way of comparison, the mortgage statement attached to Plaintiff's state court complaint showed a total balance of $379,167.58, of which $339,430.71 was principal and $10,365.92 was interest. [1-1, at 27.] Moreover, as discussed in greater detail below in Section III(C), the final judgment in the foreclosure action excluded the $155 in inspection fees. [30-1, at 6.]

conducting its first inspection on or about July 18, 2017, Defendant knew or should have known that Plaintiff had not abandoned her home. [*Id*. ¶¶ 22.] Nonetheless, Plaintiff alleges, Defendant continued to inspect the home—and charge for the inspection fees. [*Id*. ¶ 23.] As of the date of the complaint, these fees totaled $155.00. [*Id*. ¶¶ 20–21; [*id*., at 27.] Plaintiff alleges that the assessment of these fees violated certain HUD regulations that were incorporated into her mortgage and seeks to represent a nationwide class of similarly aggrieved mortgagees. See generally [1-2].

Plaintiff originally filed this claim as a class-action counterclaim in the Foreclosure Action; however, the Circuit Court of Cook County severed the counterclaim and granted her leave to file it as a separate action, which she did. [28, at 1 n.1]; see also [1-2, at 1–14]. Defendant subsequently removed the case to this Court. See generally [1]. Following removal, the Circuit Court granted summary judgment to Defendant in the Foreclosure Action on August 24, 2018. See generally [30-1]. As part of the final judgment, the "[j]udgment total [was] modified to subtract $155.00 in property inspection fees." [*Id*. at 6.]

## II. Legal Standard

When personal jurisdiction over a defendant is challenged by way of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of proving that jurisdiction exists and must make a *prima facie* showing of jurisdiction. See *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir. 2002). When a court decides a motion on the basis of paper submissions (as is the case here), a court accepts as true the plaintiff's undisputed allegations and resolves any disputes in the evidence in favor of jurisdiction. See *Purdue Research Found. v. Sanofi–Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003).[3]

---

[3] While Plaintiff asserts that the Court should construe the motion to dismiss under Rule 12(b)(2) as a motion to strike, which she asserts is premature, she has not provided any support for the proposition that

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Evaluating whether a claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

**III. Analysis**

Defendant seeks dismissal of Plaintiff's complaint on the basis of several pleading deficiencies. Additionally, Defendant asserts that Plaintiff may not simultaneously pursue a claim

---

Defendant may not challenge this Court's jurisdiction over the non-Illinois residents claims against Defendant on a motion under Rule 12(b)(2). The Court therefore examines the arguments under that standard. See, e.g., *McDonnell v. Nature's Way Prod., LLC*, 2017 WL 4864910, at *1 (N.D. Ill. Oct. 26, 2017).

for breach of contract and unjust enrichment under Illinois law. However, before addressing either of those arguments, the Court must address Defendant's argument that the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Sup. Ct. of California*, 137 S. Ct. 1773, 1780 (2017) ("*BMS*"), requires dismissal of the purported class action claims of all non-Illinois residents under Rule 12(b)(2).

### A. The Court denies Defendant's Rule 12(b)(2) motion without prejudice subject to renewal should Plaintiff file an amended complaint

Defendant argues that *BMS* forecloses this Court from exercising personal jurisdiction over Defendant to resolve the purported class action claims of non-Illinois residents. [22, § 3.] Plaintiff retorts that *BMS* does not apply to unnamed class members in a purported class action, and that in any event, this Court may exercise general jurisdiction over Defendant. [28, at 19–22.]

Because Plaintiff brings claims based in state common law and statutes, "a federal court sitting in Illinois may exercise jurisdiction over [Defendant] in this case only if authorized both by Illinois law and by the United States Constitution." *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011). To that end, the Illinois Long Arm Statute provides that courts may exercise jurisdiction on any basis allowed by the due process provisions of the Illinois and federal constitutions. See 735 ILCS 5/2-209(c). Thus, the Court may only exercise personal jurisdiction over Defendant if both constitutions' due process requirements are met. *Illinois v. Hemi Group LLC*, 622 F.3d 754, 756 (7th Cir. 2010). Where, as here, the parties do not suggest that the due process analysis differs in any respect between state and federal law, the Seventh Circuit has only considered the requirements of federal due process. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019) (observing that "no Illinois case has provided a definitive explanation of the differences between federal and Illinois due process"). The key question then, is whether Defendant has sufficient "minimum contacts" with Illinois such that the maintenance of the suit

"'does not offend traditional notions of fair play and substantial justice.'" *Tamburo v. Dworkin*, 601 F.3d 693, 700–01 (7th Cir. 2010) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), and omitting internal quotation marks).

Personal jurisdiction comes in two flavors: general and specific. *Daimler AG v. Bauman,* 571 U.S. 117, 126–28 (2014). General or "all-purpose" jurisdiction exists only "when the [party's] affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Id.* at 127 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011)) (internal quotation marks and alteration omitted). Specific jurisdiction is case-specific; the claim must be linked to the activities or contacts with the forum. *Id.* Plaintiff asserts that even if *BMS* forecloses the exercise of specific jurisdiction over the claims of similarly situated non-Illinois residents,[4] which it disputes, the Court may exercise general jurisdiction over Defendant. Because it could foreclose the need to address the parties' arguments regarding *BMS*, the Court turns first to general jurisdiction.

### 1. The Court lacks general jurisdiction over Defendant

Although Plaintiff points to the large volume of business conducted by Defendant in Illinois, Seventh Circuit and Supreme Court precedent weigh strongly against this Court's exercise of general jurisdiction over Defendant. As the Seventh Circuit explained in *Kipp v. Ski Enterprise Corp. of Wisconsin, Inc.*:

> In recent years, the Supreme Court has clarified and, it is fair to say, raised the bar for this type of jurisdiction. Because general jurisdiction exists even with respect to conduct entirely unrelated to the forum state, the Court has emphasized that it should not lightly be found. Instead, as the quote above shows, general jurisdiction exists only when the organization is "essentially at home" in the forum State. *Goodyear*, [564 U.S. at 919–20]. Thus far, the Court has identified only two places where that condition will be met: the state of the corporation's principal place of

---

[4] Though premature at this point, Plaintiff will be required no later than the class certification stage of the case to explain how she can bring a nationwide class on the basis of Illinois state laws that do not apply to any actions outside Illinois.

6

> business and the state of its incorporation. *Daimler*, [571 U.S. at 136–37]. Any additional candidates would have to meet the stringent criteria laid out in *Goodyear* and *Daimler*. Those criteria require more than the "substantial, continuous, and systematic course of business" that was once thought to suffice. *Id.* at [136–39]. The Due Process Clauses of the Fifth and Fourteenth Amendments permit courts, federal and state, to exercise general jurisdiction only when "the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit * * * on causes of action arising from dealings entirely distinct from those activities." *Id.* at [138] (quoting *Int'l Shoe*, 326 U.S. at 318).

783 F.3d 695, 698 (7th Cir. 2015). The Court of Appeals went on to conclude that the Illinois district court did not have general jurisdiction over the defendant given that (1) the defendant was a Wisconsin corporation, (2) the defendant had its principal place of business in Wisconsin, and (3) the Defendant had few contacts with Illinois. *Id.* In fact, the defendant ski lodge's only contacts with Illinois were: "attendance at the annual trade show in Chicago, its use of that show to collect the email addresses of Illinois residents for marketing purposes, its targeting of Illinois customers through the Chicagoland Express package, its success in attracting a large number of such customers to the Devil's Head Resort, and the ability of Illinois customers to visit the Devil's Head Resort/Ski Enterprise website." *Id.* Given these relatively minor contacts, the Seventh Circuit concluded the plaintiffs had come "nowhere close to the *Goodyear/Daimler* standard." *Id.*

Putting aside the question of whether Plaintiff has properly placed Defendant's connections to the forum properly before the Court, Plaintiff asserts that the Court may exercise general jurisdiction over Defendant because Defendant: (1) is registered to do business in Illinois, (2) has a registered agent in Illinois, (3) has hundreds of financial centers, ATMs, and other offices in Illinois, (4) has billions of dollars of assets that reside or originate in Illinois, and (5) owns and organizes the Chicago Marathon. [28, at 20.] Plaintiff asserts that these contacts "more than establish" general jurisdiction over Defendant. Plaintiff is mistaken. As noted above, the Supreme Court has only explicitly recognized a corporate defendant's state of incorporation or principal place of business—which here appears to be North Carolina—as conferring general jurisdiction

over a defendant. The only extension of these two locations that the Supreme Court has explicitly recognized is a temporary headquarters. See *Daimler*, 571 U.S. at 130. In fact, this case is little different than *BNSF Ry. Co. v. Tyrrell*, in which the Supreme Court concluded that while BNSF had over 2,000 miles of railroad track and more than 2,000 employees in Montana, BNSF was not so "at home" in the state to confer courts in Montana general jurisdiction over it. — U.S. —, 137 S. Ct. 1549, 1559 (2017). Here, like the railroad in *BNSF Ry. Co.*, Defendant has substantial assets and conducts a significant amount business in Illinois. But under the case law cited above, those contacts do not suffice to make Defendant so at home in Illinois that it would be reasonable to expect any suit whatsoever against Defendant to be brought there. Thus, the Court concludes it lacks general jurisdiction over Defendant.

   **2.**  **Given the Seventh Circuit may soon address the applicability of *Bristol Meyers Squibb* in class actions, the Court declines to decide the issue at this time**

As the Court recently observed in a case nearly identical to this one, there is "a significant split among the courts in this district, and across the country, regarding whether a plaintiff may bring a nationwide class action when the court in question may only exercise specific jurisdiction over the defendant." *Miszczyszyn v. JPMorgan Chase Bank, N.A.*, 2019 WL 1254912, at *3 (N.D. Ill. Mar. 19, 2019) (collecting cases analyzing the effects of the Supreme Court's decision in *BMS*). Since that decision, the Seventh Circuit has accepted, and the parties have fully briefed, a case addressing that issue among others. See *Mussat v. IQVIA, Inc.*, No. 19-1204, ECF No. 28 (7th Cir. May 03, 2019) (appellant's reply brief). Because (1) the Seventh Circuit may soon provide a definitive, binding resolution on this question and (2) the Court concludes that Plaintiff has not yet stated a claim, the Court defers consideration of the issues surrounding the Court's exercise of jurisdiction over any non-Illinois class claims unless and until Plaintiff files an amended

complaint. Defendant's motion under Rule 12(b)(2) therefore is denied at this time without prejudice to raising the same jurisdictional argument in response to any amended complaint.

> **B.** **Plaintiff may not proceed with an unjust enrichment claim in the alternative to her breach of contract claim**

The Court next addresses whether Plaintiff may assert an unjust enrichment claim in the alternative to her breach of contract claim. In her complaint, Plaintiff states that should "this Court find no contract provision expressly governs the claims arising from the allegations of this Complaint, Plaintiff asserts that [Defendant] knowingly received and retained benefits from her * * * under circumstances that render [Defendant]'s retention of such fees unjust." [1-2, ¶ 44.] Defendant asserts that such an unjust enrichment claim is barred because Plaintiff alleges the existence of an express contract in her unjust enrichment claim. [22, at 15–16.]

"While a plaintiff may plead breach of contract in one count and unjust enrichment * * * in others, it may not include allegations of an express contract which governs the relationship of the parties, in the counts for unjust enrichment and promissory estoppel." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) (quoting *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. App. Ct. 2005)). Thus, as *Cohen* explained, "[a] plaintiff may plead as follows: (1) there is an express contract, and the defendant is liable for breach of it; and (2) if there is *not* an express contract, then the defendant is liable for unjustly enriching himself at my expense." 735 F.3d at 615. However, a plaintiff may not acknowledge throughout her complaint that there is an express contract, but then allege that if the defendant did not breach the contract, then it owes damages for unjustly enriching itself. *Id.* The question is whether Plaintiff's allegations comport more closely with the former (permissible) approach or the latter (impermissible) one.

Here, Plaintiff clearly acknowledges the existence of an express contract in her unjust enrichment claim—"Should this Court find no contract *provision* expressly governs * * *." [1-2,

9

¶ 44 (emphasis added).] Plaintiff appears to be arguing that if there is no express contract provision that applies, then there is no contract dispute in this case. But, as the Court previously noted in a nearly identical case, "the proper question is not whether a contract provision applies, *i.e.*, whether or not there is a violation, but whether an express contract between the parties is implicated by the suit." *Miszczyszyn*, 2019 WL 1254912, at *4. Consequently, in cases in which plaintiffs have acknowledged an express contract relates to the subject matter of their claims, courts have prevented plaintiffs from pursuing an unjust enrichment claim, even when presented as an alternative theory. For example, in *Allergase, Inc. v. Walgreen Co.,* a plaintiff claimed to have pled an unjust enrichment claim in the alternative, in the event that the court determined that a contract had not been formed. 2017 WL 66819 at *4 (N.D. Ill. Jan. 6, 2017). However, the complaint also contained allegations of an express contract, and the Court accordingly dismissed the plaintiff's unjust enrichment theory. *Id.*

In the end, Plaintiff attempts to avoid the rule of *Cohen* by attempting the same maneuver as the plaintiffs in *Allergase*—namely, alleging not the absence of a violation but of a contract altogether. However, like the *Miszczyszyn* plaintiff, Plaintiff here repeatedly acknowledges the existence of an express contract, including in her unjust enrichment claim. "Whether a specific provision of the contract applies is not the relevant question. The relevant question is whether the parties' relationship is governed by a contract." *Miszczyszyn*, 2019 WL 1254912, at *4 (citing *Gagnon v. Schickel*, 983 N.E.2d 1044, 1052 (Ill. App. Ct. 2012); *Horwitz v. Sonnenschein Nath & Rosenthal LLP*, 399 Ill. App. 3d 965, 979, 926 N.E.2d 934, 946 (2010); *Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 623 (N.D. Ill. 2008)).

Because the relationship between Plaintiff and Defendant is clearly governed by an express contract—which Plaintiff attached to her complaint and referenced in her unjust enrichment

allegations, see [1-2 at 10–11, 16–25]—Plaintiff may not proceed with her unjust enrichment claim in the alternative. Furthermore, even if the Court had allowed Count II to proceed, Plaintiff has not yet alleged facts to state a claim under any count, as discussed below in Section III(C).

      **C.     Plaintiff fails to allege damages sufficient to state a claim on any count**

To state a claim for breach of contract under Illinois law or under the ICFA, a plaintiff must allege he or she suffered actual, pecuniary damage. See, e.g., *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007) ("Merely showing that a contract has been breached without demonstrating actual damage does not suffice, under Illinois law, to state a claim for breach of contract.") (citation omitted); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) ("In a private ICFA action, the element of actual damages 'requires that the plaintiff suffer actual pecuniary loss.'") (citation omitted).[5] Likewise, to recover under an unjust enrichment theory, a plaintiff must allege that the defendant withheld a benefit to Plaintiff's detriment. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("Unjust enrichment is a common-law theory of recovery or restitution that arises when the defendant is retaining a benefit to the plaintiff's detriment, and this retention is unjust.").

Defendant seeks dismissal of the complaint on the ground that Plaintiff has not alleged sufficient facts to show she suffered pecuniary damage necessary to state a claim under Illinois law as to all three counts. In response, Plaintiff points to her allegations that: (1) she was improperly charged for inspection fees, (2) the assessment of the fees resulted in additional interest accruing on the amount owed under the mortgage, (3) the assessment decreased her equity on the

---

[5] Importantly, nothing in this opinion should be construed as concluding that Plaintiff lacks Article III standing to pursue this action. Rather, the Court must dismiss the action because the state-law causes of action that Plaintiff has chosen to pursue all require allegations of actual, pecuniary damage which, as explained below, Plaintiff has not alleged. That is to say, the mere fact that Plaintiff can theoretically bring these claims does not mean that they are have a basis for doing so grounded in the elements of the statutory violation.

Property, (4) the assessment put her further underwater on her mortgage thus adversely impacting her bargaining position with respect to the foreclosure proceeding, and (5) she was forced to defend against Defendant's attempt to obtain payment for the allegedly unlawful fee. [28, at 10–11 (citing [1-2, ¶¶ 18, 20–26, 36, 40–41, 45, 47–48, 57–58]).]

Under Illinois law, none of Plaintiff's alleged injuries is sufficient to make out actual pecuniary harm. First, the mere assessment of a fee, without payment, does not constitute an actual pecuniary harm. See, *e.g.*, *Overstreet v. CIT Mortg. Home Loan Tr. 2007-1*, 2017 WL 1022079, at *4 (N.D. Ill. Mar. 16, 2017) (concluding that plaintiff had not adequately pled damages for an ICFA claim she alleged that she was in "constant fear and worry" that the fee at issue would harm her credit, but had not paid the fee); *Miszczyszyn*, 2019 WL 1254912, at *5 (holding that allegation of assessment, but not payment, of a fee was insufficient to state a claim for damages). Although the complaint alleges that Plaintiff paid those fees [1-2, ¶ 40], that allegation is belied by Plaintiff's own exhibits, which show the balance on these fees outstanding. [1-2, 27.] Consequently, given that (1) the Court properly considers exhibits attached to the complaint in ruling on a 12(b)(6) motion to dismiss, see Fed. R. Civ. Pro. 10(c), *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014); and (2) where those exhibits contradict the complaint's allegations, "the exhibits trump the allegations," *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010), the Court must conclude that Plaintiff never paid these fees. See also *Miszczyszyn*, 2019 WL 1254912, at *5 (finding no actual, pecuniary damage when complaint contained similar cursory language). Indeed, Plaintiff does not advance the theory of actual payment in responding to the motion to dismiss. [28 at 11]. Plaintiff cannot ground her claims in the improper assessment of a fee without claiming that she actually paid the fee.[6]

---

[6] On January 11, 2019, Plaintiff submitted supplemental authority on this question. See [39]. The case in question, however, involved a district court in New Jersey applying New Jersey contract law. See generally

Second, Plaintiff's allegation that the assessment of the fees resulted in additional interest accruing on the amount owed under the mortgage is contradicted by Ex. 2 to Plaintiff's complaint [1-2, 26–28], which demonstrates that the fees were not added into the principal amount owed under the mortgage, nor in the per diem interest calculation, but were assessed as a separate line item not subject to interest. [*Id.* at 27]. As above, "the exhibits trump the allegations," *Abcarian*, 617 F.3d at 933, so the Court must conclude that the assessment of these fees did not increase the amount of interest due on Plaintiff's loan.

Third, Plaintiff's claim that the fees' assessment decreased the equity she had in the property is too speculative to support a contract suit for damages until the fee is approved in the foreclosure action. See *Miszczyszyn*, 2019 WL 1254912, at *6 (citing *Twombly*, 550 U.S. at 555). Plaintiff has not alleged any facts to show that the foreclosure court ultimately approved the inspections fees and deducted them from the house. To the contrary—the final, modified foreclosure judgment omitted the $155 in inspection fees.[7] All Plaintiff has alleged, if anything,

---

[39-1 (*Gray v. CIT Bank, N.A.*, 2018 WL 6804273, at *1–2 (D.N.J. Dec. 27, 2018))]. Plaintiff has not drawn a convincing parallel between that decision—by a court sitting in New Jersey, interpreting New Jersey law and applying that law to a contract between different parties—and this case. In any event, to the extent that Illinois and New Jersey law are the same—a proposition that Plaintiff has not established—this Court respectfully disagrees with the proposition that, under Illinois law, unpaid charges such as the ones at issue here resulted "in increased indebtedness on the mortgage, which is a quantifiable, concrete injury." 2018 WL 6804273, at *6.

[7] Defendant attached their judgment of foreclosure and sale in the Foreclosure Action to their reply to the motion to dismiss [30-1], which the Court may take judicial notice of pursuant to *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012). See, *e.g.*, *Haddad v. American Home Mortgage Servicing, Inc.*, 2019 WL 1425835, at 2–3 (N.D. Ill. Mar. 29, 2019) ("A court may, however, take judicial notice of matters of the public record without converting a motion to dismiss into a motion for summary judgment. This narrow exception permits judicial notice of facts that are not subject to reasonably dispute. * * * Based on these principles, the Court will consider the underlying state-court foreclosure records, which are in the public record * * * .") (internal citations and quotation marks omitted); see also *Miszczyszyn*, 2019 WL 1254912, at *12 n.9.

it is mere threat of loss, which cannot suffice to support a contract or ICFA claim that requires actual damages.[8]

Fourth, the same is true for Plaintiff's bare assertion that the assessment of these inspection fees—which total less than $200 in a foreclosure action concerning over $300,000 [1-2, at 27]—has prejudiced Plaintiff's negotiating position to the extent that it caused actual damages. This is simply too speculative to state a claim for actual damages. See *Miszczyszyn*, 2019 WL 1254912, at *6. In fact, as the Court has observed previously, such an assertion amounts to a claim for emotional damages, for which a plaintiff may not recover. See, e.g., *Price v. Seterus, Inc.*, 2016 WL 1392331, at *7 (N.D. Ill. Apr. 8, 2016) ("Neither attorney's fees nor emotional damages constitute actual damages under [the] ICFA."). Likewise, Plaintiff's allegation that Defendant retained the benefit of increased leverage is too speculative to state a claim for unjust enrichment.

Fifth, the mere fact that Plaintiff challenged the fee here and before the state court in the foreclosure action and incurred attorney's fees to do so does not constitute actionable damages. See, e.g., *Gagnon v. JPMorgan Chase Bank, N.A.,* 563 B.R. 835, 848 (N.D. Ill. 2017) ("the fact that [the] ICFA separately provides for the award of attorneys' fees to successful plaintiffs also persuades the Court that a plaintiff must plead more than that he had to pay to consult with an attorney in order to allege actual damages under the ICFA").[9]

---

[8] Although not raised in the complaint, the fact that the final foreclosure amount was modified may suggest that Plaintiff's equity briefly decreased before the $155 was deducted off the judgment total. If true, though, this cannot save Plaintiff's complaint: Plaintiff's own case purporting to prove that decreases in equity are actionable as actual damages explicitly excluded plaintiffs who "have been reimbursed or will not pay the charged premiums" from its ruling. See *Lane v. Wells Fargo Bank, N.A.*, 2013 WL 3187410, *10 (N.D. Cal. June 21, 2013); see also [28, 14 (discussing same)]. Indeed, any lingering damages from this momentary loss of $155 would simply be too speculative to meet Illinois's high bar for actual, pecuniary damages.

[9] Although *Gagnon* left open the possibility that the costs incurred of defending a debt collection action could possibly constitute damages, 563 B.R. at 848, the Court cannot possibly infer that the failure to pay this disputed fee led to the Foreclosure Action given that the amount at issue in that action was well over $300,000. [1-2, at 27.] Moreover, Plaintiff has not alleged any facts about what, if any, money or time she

Finally, because Defendant dropped the inspection fees from its Foreclosure Action, Plaintiff will likely never be able to plausibly allege that she has suffered actual damages or that Defendant is retaining a benefit to Plaintiff's detriment. [30-1, at 6 (showing foreclosure "judgment total modified to subtract $155.00 in property inspection fees").] In short, Plaintiff has not provided any allegations that she has suffered actual damages or that Defendant is retaining a benefit to the Plaintiff's detriment—nor will Plaintiff likely be able to do so in light of the modified foreclosure judgment. The Court accordingly grants Defendant's motion to dismiss the complaint under Rule 12(b)(6).[10]

## IV. Conclusion

For the reasons explained above, Defendant's motion to dismiss [21] is granted in part and denied in part. The motion to dismiss under Rule 12(b)(6) for failure to state a claim is granted and Plaintiff's complaint is dismissed without prejudice. Plaintiff is granted leave to file an amended complaint no later than October 25, 2019. The motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction is denied at this time without prejudice to raising a similar jurisdictional argument in response to any amended complaint. The case is set for further status on November 6, 2019 at 9:00 a.m.

Dated: September 26, 2019

_____
Robert M. Dow, Jr.
United States District Judge

---

has spent consulting with her attorney about the inspection fees specifically in defending the foreclosure action. Finally, the Foreclosure Action was initiated well before Defendant conducted any inspections of the property. [1-2, ¶¶19, 21.]

[10] Because the Court has already dismissed the complaint on other grounds, it does not reach the questions of whether the contract and the regulations discussed therein allow Defendant to assess the fee, nor whether Plaintiff adequately pled a violation of the ICFA for unfair or deceptive conduct. See [22, at §§ I, II.A–B.]